UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **P.W. MATTHEWS, PLLC,**  Plaintiff,  vs.  **OLIVIA HUSSEY and LEONARD WHITING,**  Defendants. | 2:23-CV-11133-TGB-DRG  **ORDER GRANTING MOTION TO DISMISS (ECF NO. 2)**  **AND**  **DENYING MOTION FOR STAY (ECF NO. 3)** |

Through his law firm, P.W. Matthews, PLLC, Michigan lawyer Philip Matthews sued two of his former clients, Olivia Hussey and Leonard Whiting, for allegedly breaching a representation agreement relating to his provision of legal services in California.

Hussey and Whiting live in California and London, respectively. They have moved for dismissal of the complaint based on lack of personal jurisdiction. ECF No. 2. Matthews asks for a temporary stay in proceedings. ECF No. 3. For the reasons below, the motion to dismiss will be **GRANTED**, and the request for a stay will be **DENIED as moot**.

I.   **FACTUAL ALLEGATIONS**

Philip Matthews is an attorney at P.W. Matthews, PLLC, a law firm in Dearborn, Michigan. ECF No. 1, PageID.10. Olivia Hussey is an American actress who lives in California, and Leonard Whiting is a British actor who lives in London. *Id.*

1

According to the complaint, Hussey and Whiting retained Matthews in mid-July 2022 to prosecute claims on their behalf against Paramount Pictures, Inc., in California, relating to their experiences during the filming of the 1968 Hollywood film *Romeo and Juliet*. *Id*.

A two-page Engagement Letter governed the representation. ECF No. 1, PageID.17-19. Matthews promised to "develop legal foundations and potential filing of a case with the main purpose being an attempted resolution." *Id.* at PageID.17. In the event of a pre-filing resolution, he would receive 33% of any proceeds after deducting his costs. *Id.* at PageID.17-18. If there was no resolution, he would partner with another law firm "for the actual filing and prosecution of the legal case" due to anticipated costs. *Id.* at PageID.17. Hussey and Whiting, for their part, agreed to "do whatever [Matthews] and/or the court determine is necessary to process the lawsuit." *Id.* at PageID.18.

Matthews could "withdraw from th[e] employment at any time on giving Clients' [sic] reasonable notice and taking reasonable steps to protect Client's [sic] interests." *Id*. If he withdrew, Matthews "waive[d] any right of claim for fees for services previously rendered." *Id*.

Hussey and Whiting could also choose to terminate the representation. According to the letter:

> Clients' [sic] may terminate this agreement at any time on giving Attorney reasonable notice. On doing so, Clients' is [sic] obligated for costs expended and fees earned up to the time of termination. *Id*.

The letter additionally stated that Hussey and Matthews could:

> [C]ancel this agreement within three days after signing it, on written notice to Attorney. Client is obligated for costs expended by Attorney up to the time of cancellation. *Id.*

Matthews alleges that, after Hussey and Whiting executed the agreement, he rendered services, which included: advising them that a California law temporarily suspended the limitations period for old child sex abuse claims; corresponding with them via phone, emails, and text; conducting legal research; developing a legal strategy; and drafting a complaint. *Id.* at PageID.11. In September 2022, he sent Paramount a demand letter, along with excerpts of a draft complaint. *Id.*

Matthews's representation of Hussey and Whiting lasted less than four months. According to the complaint, while Matthews was preparing more correspondence to Paramount, Hussey and Whiting "terminated [the] representation without cause, without notice, nor without compensation nor an offer of compensation" in mid-October 2022. *Id.* at PageID.11-12. In December 2022, with the assistance of a new, California-based lawyer, they filed a complaint in the Santa Monica Superior Court against Paramount, seeking over $500,000,000.00 in damages. *Id.* at PageID.12.

In February 2023, Matthews sued Whiting and Hussey in Wayne County Circuit Court, asserting that they breached the representation agreement. His complaint contains three counts: 1) declaratory judgment; 2) breach of contract; and 3) quantum meruit. ECF No. 1. He

3

takes the position that, because the Engagement Letters were not canceled within three days of execution, Hussey and Whiting owe him 33% of any proceeds they receive in their case against Paramount. He seeks: entry of judgment declaring that the engagement letter is an enforceable contract; strict performance; and compensation for his services in the amount of 33% of any recovery in the Paramount lawsuit.

After being served with the complaint, Hussey and Whiting removed the case to federal court on the basis of diversity. ECF No. 1. They now ask for the case to be dismissed for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). ECF No. 2. They swear that they:

- Have never resided or otherwise have been present in the State of Michigan in their lifetimes;
- Have never conducted business in the State of Michigan;
- Have never owned property in the State of Michigan; and
- Have never physically met Attorney Phil Matthews or anyone employed at his firm, and that their only communication with him was via telephone regarding a potential claim against Paramount to be pursued in California regarding acts which occurred in California.

ECF No. 2-2, PageID.73; ECF No. 2-3, PageID.76. Matthews, meanwhile, has asked for a temporary stay in proceedings. ECF No. 4.

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF No. 2)

### A. Legal Standard

A federal court's exercise of personal jurisdiction in a diversity case must both (1) be authorized by the law of the state in which the court sits

4

and (2) accord with due process. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

The plaintiff has the burden of showing that personal jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The weight of that burden depends on whether a court rules on written submissions or takes evidence. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).

When a court resolves a Rule 12(b)(2) motion based on written submissions, a plaintiff need only make "a prima facie showing that personal jurisdiction exists." *Serras v. Tenn. Bank Nat'l Ass'n*, 875 F.3d 1212, 1214 (6th Cir. 1989). The Court must view his pleadings and affidavits in the light most favorable to him, and it may not weigh "the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). Nonetheless, a "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 1458.

### B. Discussion

#### 1. Michigan's Long Arm Statutes

Under MCL § 600.701, a court in Michigan may exercise general personal jurisdiction over an individual defendant through any of the following relationships:

> (1) Presence in the state at the time when process is served.
> (2) Domicile in the state at the time when process is served.
> (3) Consent, to the extent authorized by the consent and subject to [certain] limitations.

None of these factors are present here, so there is no meritorious argument that the Court has general personal jurisdiction over Hussey or Whiting. Neither is domiciled in Michigan or was served with process in Michigan. Matthews attempts to argue incorrectly that Hussey and Whiting "consented" to jurisdiction by deciding to remove the case to a Michigan federal court. ECF No. 4, PageID.173. But a decision to remove a case, on its own, does not waive an affirmative defense. *See, e.g.*, *Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104, 105 (E.D. Mich. 1987); C. Wright & A. Miller, 5C *Federal Practice and Procedure* § 1395 (3d ed. 2008). Hussey and Whiting asserted the defense of lack of personal jurisdiction promptly upon removal, so they cannot be deemed to have "consented" to a suit in Michigan.

MCL § 600.705, however, lists several relationships that confer limited (*i.e.*, case-specific) jurisdiction on a Michigan court, including:

(1) The transaction of any business within the state.
(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

Hussey and Whiting argue that Matthews has not sufficiently alleged any such relationship. ECF No. 2, PageID.66. They emphasize that the Engagement Letter between the parties is silent as to the forum where any disagreements arising from the agreement may be adjudicated and "literally" does not contain the word "Michigan." *Id.* at PageID.65.

Matthews responds that limited jurisdiction exists under MCL § 600.705(1), which confers jurisdiction over a nonresident for claims

6

"arising out of an act" constituting "[t]he transaction of any business within the state." ECF No. 4, PageID.171-72. In an affidavit, he swears that before he was retained "[he] informed both … Olivia Hussey and Leonard Whiting that [he] reside[s] in Michigan and that [his] law firm is located in Michigan." ECF No. 4-2, PageID.178.

MCL § 600.705(1) is satisfied by "the slightest act of business in Michigan." *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quotations omitted); *Sifers v. Horen*, 188 N.W.2d 623, 623-24 (Mich. 1971). From Matthews's attestations that Hussey and Whiting were aware they were engaging a lawyer in this State, Michigan's long-arm statute appears to be satisfied.

### 2. Due Process

The more critical question is whether exercising jurisdiction over Hussey and Whiting based on their decision to briefly retain a lawyer from Michigan to prosecute claims in California accords with due process. The test is whether their conduct created a sufficient connection to Michigan for them to "reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). For a court to exercise jurisdiction over a nonresident, the nonresident must have "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions

7

of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit articulated a three-pronged test to guide this inquiry:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.

401 F.2d 374, 381 (6th Cir. 1968).

The parties cite little caselaw illustrating how this test applies to here, and the Court's analysis is hampered by the manner in which Matthews has chosen to attempt to satisfy his burden of establishing jurisdiction. In a one-page affidavit, he states:

- He is a lifelong resident of Michigan;
- He has been licensed to practice law in Michigan since 1997; and
- Before he was retained by Hussey and Whiting, he told them both that he resides in Michigan and that his office is in Michigan.

ECF No. 4-2, PageID.178. Matthews does not dispute that he never physically met Hussey or Whiting in Michigan, nor that he was retained by them to prosecute claims in California based on actions occurring in California. Beyond his affidavit, he has submitted to the Court only: 1) executed Letters of Engagement, and 2) a copy of the complaint Hussey and Whiting filed in California with the assistance of their new counsel.

8

In unsworn assertions in the factual background of his brief opposing dismissal, Matthews additionally says that:

> [He] also moonlights as the author of children's books. His manager who assists with his publishing efforts, Tony Marinozzi, also serves as the manager for Defendants Leonard Whiting and Olivia Hussey. Marinozzi introduced and recommended Matthews to Whiting and Hussey to represent them in their civil action against Paramount Pictures Corporation.
>
> Prior to Whiting and Hussey formally retaining Matthews, its principal expended considerable time developing a professional relationship, researching the legal issues, and earning the trust of Defendants and their spouses. Philip Matthews informed Whiting and Hussey that he was an attorney licensed to practice in Michigan with his law firm located in Michigan. Knowing Matthews'[s] relationship to the State of Michigan—and after several weeks of telephone conversations, email correspondence, text messages, and WhatsApp communications, by and amongst Matthews, Whiting, Hussey, their spouses, and Marinozzi—the Defendants decided to retain Matthews to represent them in their lawsuit against Paramount Pictures Corporation.

ECF No. 4, PageID.168. He does not ask for an evidentiary hearing or the opportunity to engage in discovery.

### a) *Purposeful Availment*

The "purposeful availment" requirement exists to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations and citations omitted). It is satisfied

9

when nonresidents "deliberately … engage[] in significant activities within a State or … create[] continuing obligations between [themselves] and residents of a forum." *Id.* at 475-76 (quotations and citations omitted). Physical presence is not required. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). The Court focuses on the quality of a defendant's contacts in the forum state, not their quantity. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

Matthews asserts that Hussey and Whiting purposefully availed themselves of Michigan because they: 1) were aware that Matthews was licensed in and had offices in Michigan and 2) corresponded with him for several weeks. ECF No. 4, PageID.174. He adds that their termination of representation caused "substantial consequences" for him in Michigan.

As Hussey and Whiting point out, the mere existence of a contract between a resident of a forum state and a nonresident—although a factor to be considered—is insufficient on its own to subject the nonresident to suit in the forum's courts. *Burger King*, 471 U.S. at 478; *Premier Automation Contactors, Inc. v. Pinney*, No. 19-13712, 2020 WL 13577554, at *5 (E.D. Mich. Apr. 30, 2020) ("[F]ar more than cross-border negotiations are required to establish personal jurisdiction."). Injury to a forum resident is also not independently sufficient. *Walden*, 571 U.S. at 290. Other factors, such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," must be considered. *Burger King*, 471 U.S. at 479.

10

Viewing the record in the light most favorable to Matthews, the Court concludes that the information he has presented about Hussey and Whiting's connections to Michigan show that they are too attenuated to establish personal jurisdiction. True, both signed letters of engagement with a Michigan lawyer and, accepting as true the attestations in Matthews's affidavit, did so knowingly. Presumably they also knew that Matthews would be doing work on their claims *from* Michigan. And they accepted an ongoing obligation to remain in contact with Matthews, a Michigan resident, during the pendency of their California case.

But neither Hussey nor Whiting reside *in* Michigan. Nor did they retain Matthews to litigate a case here. From the additional allegations Matthews supplied in his response brief, it appears that they did not even deliberately reach out to him to solicit his services. *Compare Pinney*, 2020 WL 13577554, at *6 (no personal jurisdiction where there was "absence of any allegation that Defendants initiated the actions") *with Serras*, 875 F.2d at 1213 (jurisdiction existed where nonresidents initiated sale). Instead, they were fortuitously introduced by a third party, Marinozzi, whose location, place of residence, and citizenship are unknown. Following this introduction, it was Matthews who corresponded with Hussey and Whiting for "several weeks" to—in his own words—"develop[] a professional relationship" and "earn[] the trust of Defendants and their spouses" and receive their business. Put simply, it does not appear that Hussey and Whiting "reached" into Michigan. Quite the opposite.

11

Hussey and Whiting's relationship "centered" on Matthews's work *outside* Michigan. Their contacts with Michigan occurred simply because Matthews's office happens to be located in Michigan, *not* because they sought to invoke the protections of Michigan law. *See Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (no purposeful availment in Tennessee even though defendant-clients engaged Tennessee law firm, traveled to Tennessee at least once to meet plaintiff-lawyer, and communicated with plaintiff-lawyer, where lawyer-plaintiff worked only on cases outside Tennessee). Notably, the Engagement Letters are silent as to what law applies in the event of a dispute and do not mention Michigan by name. Although Hussey and Whiting corresponded with Matthews in Michigan, those communications related to litigation in *California.* Any prospect Matthews had of compensation for his services was to occur from a possible settlement negotiated in *California.*

From this, the Court cannot conclude that Hussey and Whiting have sufficient contacts with Michigan to justify an exercise of personal jurisdiction over them. The facts Matthews has presented fall short of meeting his burden and suggest only "random, fortuitous, and attenuated" contacts with Michigan.

### b) The "Arising From" Requirement

For a claim to "arise" from a defendant's contacts with a forum state, the contacts must be "related to the operative facts of the controversy." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903

(6th Cir. 2017) (quotations omitted). A breach of contract action is generally considered to "arise from" a defendant's contact with a state because the contract is "necessarily the very soil from which the action for breach grew." *Calphalon Corp.*, 228 F.3d at 724 (quotation omitted).

As discussed above, it is unclear where the "soil" that grew this contract was actually located. The agreement's object was the provision of legal services directed at California, not Michigan; the agreement is silent as to which law governs. The parties do not dispute that Hussey and Whiting did *not* execute it in Michigan. Since the contract does not appear to have a "substantial relationship" to Michigan, and Hussey and Whiting allegedly breached it through actions in California, the Court cannot readily conclude that Matthews's claims "arose from" Defendants' contacts in Michigan. *See id.* (concluding that, because plaintiff could not show that defendant had a substantial connection to the state, the cause of action did not arise from defendant's contact with the state).

### c) *Reasonableness of exercising jurisdiction*

In evaluating whether exercising jurisdiction over a defendant would be reasonable, the Court considers several factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 555 (6th Cir. 2007).

Given Hussey and Whiting's lack of a substantial relationship with Michigan, the brief four-month period of the "representation," and the fact that Matthews's recovery is entirely dependent on uncertain variables (*i.e.*, whether Hussey and Whiting receive anything at all from the Paramount lawsuit in California), the Court cannot conclude it would be reasonable to require them to defend this case in Michigan.

Of course, Michigan has an interest in enforcing contracts made with its residents. But the Court is doubtful that it has a *substantial* interest in enforcing contracts for legal work directed outside of its borders. *Cf, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 466 (1978) (recognizing state's interest in regulating its lawyers). So too with Matthews's interest in obtaining compensation for his work. While he undoubtedly has an interest in collecting fees he allegedly earned, suing Defendants here is by no means the most efficient or effective method to achieve that goal. And this interest is arguably less compelling because, while he seeks compensation for the provision of legal services directed at California, he has not alleged that he is licensed as an attorney in California. The records of the California bar do not list him as a member.

The record before the Court does not say precisely what legal work Attorney Matthews conducted for the Defendants, so the Court is in no position to evaluate whether Matthews was sufficiently qualified to accept the representation or needed to be licensed in California. It is

14

sufficient for the day to say that Matthews's failure to meet his burden to establish personal jurisdiction requires dismissal of the complaint.

### III. PLAINTIFF'S MOTION TO STAY (ECF No. 3)

Matthews has asked for a temporary stay in this case until September 2023. He says that the stay is necessary because Hussey and Whiting's complaint in Santa Monica was "struck" and it is unclear if they intend to refile. According to Matthews, "[i]n the event Defendants do not re-file their case against Paramount in California, Plaintiff in this case likely will dismiss this action, obviating the need to brief Defendants' motion to dismiss." ECF No. 3, PageID.141.

Typically, when a stay motion is "premised on the alleged significance of another case's imminent disposition, courts have considered the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015).

The Paramount lawsuit has absolutely no dispositive effect on this case. The public interest is disserved by delaying the disposition of a case for a plaintiff to mull over whether he really wants to bring a suit. Meanwhile, withholding judgment would cause substantial hardship for Hussey and Whiting, who need to know whether they will actually be required to defend themselves in this suit. But since the Court is

dismissing the case for lack of personal jurisdiction, the request for a stay must be **DENIED as moot.**

### IV. CONCLUSION

For the reasons explained above, Hussey and Whiting's Motion to Dismiss (ECF No. 2) is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. Matthews's Motion to Stay (ECF No. 3) is **DENIED** as **moot**.

**IT IS SO ORDERED** this 19th day of December, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge